# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| _____ ) | | |
| **MIDWEST FASTENER CORP.**, ) | | |
| a Michigan corporation, **THE HENRY** ) | | |
| **DEVRIES REVOCABLE TRUST** and **THE** ) | | |
| **ROBERT DANIEL DEVRIES LIVING** ) | | |
| **TRUST**, ) | | |
| ) | | |
|       Plaintiffs, ) | | |
| ) | | |
| v ) | | |
| ) | | |
| **KATHLEEN SEBELIUS**, in her official ) | Docket No. _____ | |
| capacity as Secretary of the United States ) | | |
| Department of Health and Human Services; ) | Hon. _____ | |
| **THOMAS PEREZ**, in his official capacity as ) | | |
| Acting Secretary of the United States ) | | |
| Department of Labor; **JACOB LEW**, in his ) | | |
| official capacity as Secretary of the ) | | |
| United States Department of the Treasury; ) | | |
| **UNITED STATES DEPARTMENT OF** ) | | |
| **HEALTH AND HUMAN SERVICES**; ) | | |
| **UNITED STATES DEPARTMENT OF** ) | | |
| **LABOR**; and **UNITED STATES** ) | | |
| **DEPARTMENT OF THE TREASURY**, ) | | |
| ) | | |
|       Defendants. ) | | |
| _____ ) | | |

## VERIFIED COMPLAINT

Plaintiff, Midwest Fasteners Corp., by and through its attorneys, for its Verified Complaint,

states:

## NATURE OF THE CASE

1.      This case is about religious freedom.  In this action, Plaintiffs seek declaratory and

injunctive relief for the Defendants' violations of the Religious Freedom Restoration Act, 42

U.S.C. § 2000bb *et seq.* (herein "RFRA"), and the First and Fifth Amendments to the United States

Constitution caused by the actions of the Defendants in implementing the Patient Protection and

Affordable Care Act (Pub. L. 111-148, March 23, 2010, 124 Stat. 1029) and the Health Care and

Education Reconciliation Act (Pub. L. 111-152, March 30, 2010, 124 Stat. 1029) (collectively

known and herein referred to as the "Affordable Care Act"), in ways that force Plaintiffs and

thousands of other individuals to violate their deepest held religious beliefs.

2.       The DeVries Families consisting of Henry DeVries through the Henry DeVries

Revocable Living Trust dated February 26, 1992 and Robert DeVries through the Robert Daniel

DeVries Living Trust u/a/d February 10, 1993 (collectively the "DeVries Plaintiffs") comprise all

of the voting shareholders of Midwest Fastener Corp. which is organized as a corporation under

the Michigan Business Corporation Act.

3.       Plaintiff Midwest Fastener Corp. is a national supplier of fasteners, headquartered

in Portage, MI. It is licensed to do business in 50 states and employs a total of 187 employees.

4.       Plaintiffs provide self-funded health insurance through Midwest Fastener Corp., to

employees and their dependents. Approximately 91 employees (and their dependents) of Plaintiff

Midwest Fastener Corp., Inc. are currently covered by this group health insurance plan. Each of

the members of the DeVries Plaintiffs are believing and practicing Christians and each believes

the Holy Bible is the inspired, inerrant Word of God and that the Holy Bible instructs that each

human life, which begins at conception, is created in God's image, that God mandates respect for

the sanctity of each human life, and that abortion and abortion-inducing drugs result in the

wrongful taking of a human life.

5.       With significant exceptions, all group health plans and health insurance issuers that

offer non-grandfathered group or individual health coverage must provide coverage for certain

preventive services without cost-sharing.  42 U.S.C. § 300gg-13. The Plaintiffs have a non-grandfathered plan, do not benefit from any exceptions, and must provide these services.  These services have been defined by the Health Resources and Services Administration ("HRSA") to include "[a]ll Food and Drug Administration approved contraceptive methods, sterilization procedures and patient education and counseling for all women with reproductive capacity." HRSA, Women's Preventive Services: Required Health Plan Coverage Guidelines, http://www.hrsa.gov/womensguidelines/ (referred to hereinafter the "HHS Mandate").

6.     In the category of "FDA-approved contraceptives" included in this HHS Mandate are several drugs or devices that may cause the demise of an already-conceived but not-yet-implanted human embryo, such as "emergency contraception" or "Plan B" drugs (the so-called "morning after" pill) and "ella$^{TM}$" (the so-called "week after" pill) which studies show can function to kill embryos even after they have implanted in the uterus by a mechanism similar to the abortion drug RU-486.

7.     The DeVries Plaintiffs and Plaintiff Midwest Fastener Corp have always maintained objections on the basis of their religious beliefs to supporting either directly or indirectly the use of any drugs or procedures intended for the purposes of inducing an abortion or otherwise terminating an embryo. Such drugs or procedures are referred to collectively herein as "Abortifacients"

8.     Over the last several months, the DeVries Plaintiffs have become aware that many citizens of the United States who hold the same or similar religious beliefs as do the DeVries Plaintiffs have, as a result of such religious beliefs, challenged the application of the HHS Mandate to them and to their for-profit businesses.

9.      Between 2011 and 2013, the DeVries Plaintiffs have annually and in compliance with their religious faith made efforts to ensure that Plaintiff Midwest Fastener Corp conducted annual reviews of its insurance coverage plans to exclude the coverage of any Abortifacients under their employee health policies. They have further instructed the agents and employees of their insurer that they object to the inclusion coverage of Abortifacients in any policy of coverage covered by Plaintiff Midwest Fastener Corp.

10.     In April of 2013, the DeVries Plaintiffs discovered that the health insurance plan offered by Plaintiff Midwest Fastener Corp. to its employees and their dependents (approximately 187 employees) covered "FDA-approved contraceptives." The DeVries Plaintiffs did not understand, until late April of 2013, that "FDA-approved contraceptives" included abortion-inducing drugs or that such coverage was going to be provided by the plan they purchased.

11.     Up until this point, it had been the Plaintiffs' understanding that their instructions that no Abortifacients be covered had been honored.

12.     The Plaintiffs immediately voiced their religious objections to Plaintiff Midwest Fastener's insurer to providing insurance coverage for abortion-inducing drugs. The Plaintiffs were informed by the insurer that, while the insurer had failed to inform the Plaintiffs of this coverage, Plaintiff Midwest Fastener Corp.'s insurance plan covered "FDA-approved contraceptives" and that such "approved contraceptives" indeed included Plan B drugs and ella[TM], drugs that are, in fact, abortion-inducing drugs.

13.     The DeVries Plaintiffs thereupon instructed the insurer to omit coverage of such abortion-inducing drugs from Plaintiff Midwest Fastener's employee health insurance plan. The insurer thereupon informed the Plaintiffs that, without injunctive relief from this Court, the insurer

was required to comply with the HHS Mandate and must include such abortion-inducing drugs in Plaintiff Midwest Fastener Corp.'s group health insurance plan.

14.     Because there was not time in late April 2013 to seek judicial relief, and without any viable option, the DeVries Plaintiffs, and Plaintiff Midwest Fastener Corp, were forced, at least temporarily, to comply with the HHS Mandate or face the threat of heavy fines and penalties. The Plaintiff's are currently exploring ways of eliminating such objectionable abortion-inducing drugs from their employee health insurance plan.

15.     The HHS Mandate also forces the Plaintiffs to fund government-dictated speech, to wit: education and counseling about abortion-inducing drugs, that is directly at odds with the deeply held religious beliefs that they strive to embody in the management and operation of Plaintiff Midwest Fastener Corp.

16.     In that the HHS Mandate is a substantial burden on Plaintiffs' religious exercise, Defendants' refusal to accommodate the religious and conscience objections of the DeVries Plaintiffs, and Plaintiff Midwest Fastener Corp. and other similarly situated individuals and for-profit business entities is highly selective.

17.     The Affordable Care Act exempts a wide variety of health insurance plans from the HHS Mandate and, upon information and belief, the Defendants and other government officials have provided thousands of exemptions or waivers from the Affordable Care Act for various other entities, such as large corporations.[1] But Defendants' HHS Mandate does not exempt Plaintiffs' employee health insurance plan or those of many other religious Americans.

---

[1] Judge Kane estimated that "191 million Americans belong to plans which may be grandfathered under the ACA." *Newland v. Sebelius,* 2012 U.S. Dist. LEXIS 104835 at *4 (D. Colo. July 27, 2012); accord *Tyndale House Publ'rs. V. Sebelius,* 2012 U.S. Dist. LEXIS 163965 at *57-61 (D.D.C. Nov 16, 2012).

18.     Defendants' actions violate Plaintiffs' right freely to exercise religion protected by the RFRA and the Religion Clauses of the First Amendment to the United States Constitution.

19.     Defendants' actions also violate Plaintiffs' right to the freedom of speech as secured by the Free Speech Clause of the First Amendment to the United States Constitution.

20.     Plaintiffs are now being harmed by Defendants' HHS Mandate. The HHS Mandate by its terms forces Plaintiffs to obtain and pay for insurance coverage of the objectionable items in their January 1, 2013 employee health insurance plan and in succeeding year's plans without relief from this Court.

21.     Absent immediate injunctive relief from this Court, by virtue of the number of full-time employees employed by Plaintiffs, Plaintiffs must either continue to comply with the HHS Mandate by being illegally and unconstitutionally coerced into violating their sincerely held religious beliefs or face the threat of heavy fines and penalties.

22.     The HHS Mandate forces Plaintiffs to fund government-dictated speech concerning education and counseling related to abortion-inducing drugs that is directly at odds with Plaintiffs' deeply held religious beliefs and the moral ethics Plaintiffs strive to embody in Plaintiff Midwest Fastener Corp.

23.     Defendants' coercion tramples on the freedom of conscience of Plaintiffs and of millions of other Americans who seek to abide by their religious convictions in their lives and in their businesses, to comply with moral imperatives decreed by God in Scripture, and to participate in the public square through their businesses and other activities in a way that is consistent with their deeply held religious beliefs and the ethical imperatives decreed by God.

24.     Defendants' actions violate Plaintiffs' right to freely exercise their religion, rights protected by the Religion Clauses of the First Amendment to the United States Constitution, rights

secured by the Free Speech Clause of the First Amendment to the United States Constitution, and rights protected by the Religious Freedom Restoration Act.

25.      Plaintiffs are faced with immediate, imminent, continuing, and irreparable harm due to Defendants' HHS Mandate which, by its terms, forces Plaintiffs to obtain and pay for insurance coverage for objectionable abortion-inducing drugs and related education and counseling in their employee health insurance plan on and after January 1, 2013.

26.      Plaintiffs therefore will continue to suffer irreparable harm unless and until this Court enters declaratory and injunctive relief to protect Plaintiffs from Defendants' deliberate attack on Plaintiffs' consciences, religious freedoms, and speech freedoms which result from continued forced compliance with the HHS Mandate.

## **PARTIES**

27.      Plaintiff Henry DeVries as Trustee of the Henry DeVries Revocable Trust dated February 26, 1992 is an individual, residing in Kalamazoo County, Michigan and, along with the other members of the DeVries Plaintiffs, is one of the two voting shareholders of Plaintiff Midwest Fastener Corp. Plaintiff Henry DeVries is also President of Plaintiff Midwest Fastener Corp. His business address is 9031 Shaver Rd., Portage, MI 49024.

28.      Plaintiff Robert DeVries as Trustee of the Robert Daniel DeVries Living Trust u/a/d February 10, 1993 is an individual, residing in Kalamazoo County, Michigan and, along with the other members of the DeVries Plaintiffs, is one of the two voting shareholders of Plaintiff Midwest Fastener Corp. Plaintiff Robert DeVries is also Vice-President of Plaintiff Midwest Fastener Corp. His business address is 9031 Shaver Rd., Portage, MI 49024.

29.      Plaintiff Midwest Fastener Corp is a Michigan Domestic Profit corporation in good standing. Its Articles of Incorporation, filed with the Michigan Secretary of State on provide,

among other things, that Plaintiff Midwest Fastener Corp. "is organized [for] the transaction of all lawful business for which corporations may be incorporated pursuant to the Michigan Corporations Code . . . [,] shall have all of the rights, privileges and powers now or hereafter conferred upon corporations by the Michigan Corporation Code . . . [and] may exercise all powers necessary or convenient to effect any of the purposes for which the corporation has been organized."  Its Articles of Incorporation, and the Michigan Business Corporation Act, do not prohibit Plaintiff Midwest Fastener Corp. from exercising religion or limit its exercise of religion. The business address of Plaintiff Midwest Fastener Corp. is 9031 Shaver Rd., Portage, MI 49024.

30.    Defendants are appointed officials of the United States government and United States Executive Branch agencies responsible for issuing and enforcing the HHS Mandate.

31.    Defendant Kathleen Sebelius (herein "Sebelius") is the Secretary of the United States Department of Health and Human Services (herein "HHS"). In that capacity, she is responsible for the operation and management of HHS.  Sebelius is sued in her official capacity only.

32.    Defendant HHS is an executive agency of the United States government and is responsible for the promulgation, administration, and enforcement of the HHS Mandate.

33.    Defendant Thomas Perez (herein "Perez") is the Acting Secretary of the United States Department of Labor (herein "DOL"). In that capacity, he is responsible for the operation and management of DOL.  Perez is sued in his official capacity only.

34.    Defendant DOL is an executive agency of the United States government and is responsible for the promulgation, administration, and enforcement of the HHS Mandate.

35.     Defendant Jacob Lew (herein "Lew") is the Secretary of the United States Department of the Treasury (herein "Treasury"). In that capacity, he is responsible for the operation and management of Treasury. Lew is sued in his official capacity only.

36.     Defendant Treasury is an executive agency of the United States government and is responsible for the promulgation, administration, and enforcement of the HHS Mandate.

## JURISDICTION AND VENUE

37.     This action arises under the Constitution and laws of the United States. The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1361; jurisdiction to render declaratory and injunctive relief under 28 U.S.C. §§ 2201 and 2202, 42 U.S.C. § 2000bb-1, 5 U.S.C. § 702, and Fed. R. Civ. P. 65; and authority to award reasonable attorney's fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412, and 42 U.S.C. § 1988.

38.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(e). A substantial part of the events or omissions giving rise to this Verified Complaint occurred in this district and all of the Defendants are domiciled and/or have a principal place of business in this district.

## FACTUAL ALLEGATIONS

39.     Plaintiffs reallege all matters set forth above and incorporate them herein by reference.

### 1.     Plaintiffs' Religious Beliefs

40.     Each of the members of the DeVries are believing and practicing Evangelical Christians and each believes that the Holy Bible is the inspired, inerrant Word of God and that the Holy Bible instructs that each human life, which begins at conception, is created in God's image, that God mandates respect for the sanctity of each human life, and that abortion and abortion-inducing drugs result in the wrongful taking of a human life.

41.     One of the religious and moral teachings which each of the members of the DeVries Plaintiffs embraces, based on the Holy Bible, is that a preborn child is, from the moment of conception, *i.e.*, a fertilized human embryo, a human being created in the image of God.  See, *e.g.,* Ps. 51:5; 139:13; Luke 1:41-44; 18:15; 2 Tim. 3:15.

42.     Based on these religious and moral teachings, the DeVries Plaintiffs sincerely believe that the termination of the life of a preborn child by, among other ways, abortion-inducing drugs is an intrinsic evil and a sin against God. Therefore, abortion and any abortion-inducing drugs that may terminate the life of a fertilized embryo are morally wrong and objectionable to each of the members of the DeVries Plaintiffs.

43.     The members of the DeVries Plaintiffs are all of the voting shareholders of Plaintiff Midwest Fastener Corp. and, as such, are solely responsible for the management and operation of Plaintiff Midwest Fastener Corp. They seek to conduct the business operations of Plaintiff Midwest Fastener Corp. with integrity, in compliance with their pro-life beliefs, and in a manner that honors God.  The DeVries Plaintiffs exercise their faith as Christians living in the world by operating Plaintiff Midwest Fastener Corp.  They do not believe that their faith ends upon entry into the market nor do they believe that business, commerce, and profitability are in conflict with their faith.

44.     Consequently, each of the members of the DeVries Plaintiffs believes that it would be immoral and sinful for Plaintiff Midwest Fastener Corp. to be required to continue to participate in, pay for, facilitate, or otherwise support abortion-inducing drugs and to provide the related education and counseling as is required by the HHS Mandate.

45.     Plaintiff Midwest Fastener Corp. is operated in accordance with the faith of the DeVries Plaintiffs.  It too serves God and exercises religion by, among other things, operating as

a family-oriented company, tithing directly from corporate funds, and keeping the Sunday as a Sabbath day free from work.

2.      **Plaintiffs' Health Insurance Plan**

46.     Collectively, the members of the DeVries Plaintiffs have demonstrated their sincerely held religious beliefs by, among other ways, making substantial contributions in support of Christian Charitable works including organizations that support and affirm the life of unborn children. As part of fulfilling their organizational mission and Evangelical Christian beliefs and commitments, the DeVries Plaintiffs, through Plaintiff Midwest Fastener Corp. provide generous self-insured coverage for their employees and their dependents through Professional Benefits Services, a health benefits provider.

47.     Plaintiff Midwest Fastener Corp. has a partially self-funded health plan, which provides the funding for employees' health benefits up to a specified limit.

48.     Plaintiff Midwest Fastener Corp. employs approximately 187 full-time employees throughout its various locations. At present, 91 of these employees (and their dependents) are health insurance plan participants.

49.     The plan year for Plaintiff Midwest Fastener Corp.'s insurance plan begins on January 1 of each year. The current plan began on January 1, 2013. The insurance plan is thus renewed on January 1 of each year.

50.     The DeVries Plaintiffs did not discover until late April 2013 that the health insurance benefits offered by Plaintiff Midwest Fastener Corp. to its employees and their dependents covered "FDA-approved contraceptives" and that "FDA-approved contraceptives" included both (a) "contraceptives" which prevented contraception, to which the DeVries Plaintiffs and Plaintiff Midwest Fastener Corp. do not object, and (b) Plan B drugs and ella$^{TM}$, drugs which

are, in fact, abortion-inducing drugs, and intrauterine devices which also is an abortion-inducing device, to which the DeVries Plaintiffs and Plaintiff Midwest Fastener Corp do vigorously object on religious grounds.

51.     The DeVries Plaintiffs thereupon instructed their insurer to omit coverage of such abortion-inducing drugs from Plaintiff Midwest Fastener Corp.'s insurance plan. The insurer thereupon informed the DeVries Plaintiffs that, without injunctive relief from this Court, the insurer was required to comply with the HHS Mandate and to include such abortion-inducing drugs in Plaintiff Midwest Fastener Corp.'s group health insurance plan.

52.     Plaintiff Midwest Fasteners Corp. further provides its employees with option health savings accounts ("HSA"), which allow employees to pay pre-tax income for services not covered under Plaintiff Midwest Fasteners Corp.'s health insurance.

53.     Because the DeVries Plaintiffs were unaware of the coverage there was not time in late December 2012 to seek judicial relief relating to the plan beginning on and after January 1, 2013, without any viable option, the DeVries Plaintiffs, and Plaintiff Midwest Fastener Corp.  are forced to comply with the HHS Mandate or face the threat of heavy fines and penalties.

54.     The DeVries Plaintiffs, and Plaintiff Midwest Fastener Corp., were also forced, on and after January 1, 2013, to fund government-dictated speech that is directly at odds with the deeply held religious beliefs.

55.     The company that manages the health benefits to Plaintiff Midwest Fastener Corp., i.e. Professional Benefits Services, has informed the DeVries Plaintiffs that, upon the issuance of injunctive relief by this Court, it will immediately remove abortion-inducing drugs from plan coverage.

### III.    The Affordable Care Act and the HHS Mandate

56.     Under the Affordable Care Act, employers with over 50 full-time employees are required to provide a certain minimum level of health insurance to their employees.

57.     On February 15, 2012, the Defendants issued final rules through the Departments of HHS, Labor, and Treasury entitled "Group Health Plans and Health Insurance Issuers Relating to Coverage of Preventive Services Under the Patient Protection and Affordable Care Act," 77 Fed. Reg. 8725-30 that forces Plaintiffs to pay for and otherwise facilitate the insurance coverage and use of abortion-inducing drugs and related education and counseling.

58.     This final rule was adopted without giving due weight to the tens of thousands of public comments submitted to the Defendants in opposition to the HHS Mandate.

59.     With significant exceptions, these final rules require that all group health plans and health insurance issuers that offer non-grandfathered group or individual health coverage must provide coverage for "preventive services," *i.e.,* contraception drugs, abortion-inducing drugs, and education and counseling related to these drugs, all of which must be offered with no cost-sharing by the covered employee. 42 U.S.C. § 300gg-13.

60.     These services have been defined by the Health Resources and Services Administration ("HRSA"), based on recommendations from the Institute of Medicine, to include "[a]ll Food and Drug Administration approved contraceptive methods, sterilization procedures and patient education and counseling for all women with reproductive capacity." HRSA, Women's Preventive     Services:     Required     Health     Plan     Coverage     Guidelines, http://www.hrsa.gov/womensguidelines/ (referred to herein as the "HHS Mandate").

61.     In the category of "FDA-approved contraceptives" included in this HHS Mandate are several drugs or devices that are not truly "contraceptives" but may cause the demise of an

already-conceived but not-yet- implanted human embryo, such as "emergency contraception" or "Plan B" drugs (the so-called "morning after" pill).

62.     Another "FDA-approved contraceptive" in this same category is a drug called "ella™" (the so-called "week after" pill) which studies show can function to kill human embryos even after the human embryo has implanted in the uterus by a mechanism similar to the abortion drug RU-486.

63.     The manufacturers of these abortion-inducing drugs, methods and devices in the category of "FDA-approved contraceptives" indicate on product labeling that these drugs can function to cause the demise of a human embryo.

64.     The HHS Mandate also requires group health care plans to pay for the provision of counseling, education, and other information concerning contraception (including devices and drugs such as Plan B and ella™ that cause early abortion or harm to human embryos) and sterilization for all women beneficiaries who are capable of bearing children.

65.     The HHS Mandate applies not only to sponsors of group health plans such as employers who provide self-insurance, but also to issuers of insurance such as the issuer which provides health insurance to Plaintiff Midwest Fastener Corp., to wit: Professional Benefits Services. Accordingly, Plaintiffs cannot avoid the HHS Mandate by shopping for an insurance plan that accommodates their right of conscience because the Administration has intentionally foreclosed that possibility.

66.     The HHS Mandate applies to the first health insurance plan-year beginning after August 1, 2012.

67.     The HHS Mandate currently offers the possibility of a narrow exemption to religious employers, but only if such religious employer meets all of the following requirements:

(1) the religious employer has the inculcation of religious values as its purpose; (2) the religious employer primarily employs persons who share its religious tenets; (3) the religious employer primarily serves persons who share its religious tenets; and (4) the religious employer is a nonprofit organization described in section 6033(a)(1) and (a)(3)(A)(i) or (iii) of the IRC. Section 6033(a)(3)(A)(i) and (iii) of the IRC refers to churches, their integrated auxiliaries, and conventions or associations of churches, as well as to the exclusively religious activities of any religious order.

68.     President Obama held a press conference on February 10, 2012, and later (through Defendants) issued an "Advanced Notice of Proposed Rulemaking" ("ANPRM") on March 21, 2012 (77 Fed. Reg. 16501–08), claiming to offer a "compromise" under which some religious non-profit organizations not meeting the above definition would still have to comply with the HHS Mandate, but by means of the employer's insurer offering the employer's employees the same coverage for "free."[2]

69.     On February 10, 2012 a document was also issued from the Center for Consumer Information and Insurance Oversight (CCIIO), Centers for Medicare & Medicaid Services (CMS), of HHS, entitled "Guidance on the Temporary Enforcement Safe Harbor for Certain Employers, Group Health Plans and Group Health Insurance Issuers with Respect to the Requirement to Cover

---

[2] On February 1, 2013, the Defendants proposed another rule which purportedly, if adopted, will broaden this narrow exemption to religious employers.  In fact, this new proposed exemption covers only a sliver of religious organizations. As before, it cross-references and relies upon an unrelated section in the IRC that exempts certain church-related organizations covered by the unrelated section and therefore, by this new, proposed exemption, which does not become effective, if at all, until on or about August 1, 2013, are (i) churches, (ii) conventions or associations of churches, (iii) integrated auxiliaries of churches (e.g., organizations that are affiliated with and predominantly supported by a church such as a food pantry that is controlled and funded by a church), and (iv) religious orders (e.g., monks or missionaries such as the Jesuits). This proposed new rule does not apply to Plaintiffs or other for-profit entities.  Like its predecessor, the proposal is neither a rule, a proposed rule, nor the specification of what a rule proposed in the future would actually contain. It in no way changes or alters the final status of the February 15, 2012 HHS Mandate.  It does not even create a legal requirement that Defendants change the HHS Mandate at some time in the future.

Contraceptive Services Without Cost Sharing Under Section 2713 of the Public Health Service Act, Section 715(a)(1) of the Employee Retirement Income Security Act, and Section 9815(a)(1) of the Internal Revenue Code."

70.     Under this "Guidance," an organization that truthfully declares "I certify that the organization is organized and operated as a non-profit entity; and that, at any point from February 10, 2012 onward, contraceptive coverage has not been provided by the plan, consistent with any applicable State law, because of the religious beliefs of the organization," and that provides a specified notice to plan participants, will not "be subject to any enforcement action by the Departments for failing to cover recommended contraceptive services without cost sharing in non-exempted, non-grandfathered group health plans established or maintained by an organization, including a group or association of employers within the meaning of section 3(5) of ERISA, (and any group health insurance coverage provided in connection with such plans)," until "the first plan year that begins on or after August 1, 2013."

71.     Neither of these "compromises" is helpful to Plaintiffs because, among other reasons, Plaintiff Midwest Fastener Corp. is not a non-profit entity. Therefore, while the Defendants' most recent "compromise" purports to accommodate the religious beliefs of even more religious non-profits beyond the HHS Mandate's initial religious exemption for churches, none of these measures will stop the HHS Mandate from continuing to impose its requirements on Plaintiffs' plan year on and after January 1, 2013.

72.     As Plaintiffs' health insurance plan does not qualify for grandfathered status, Plaintiffs were mandated to comply with the HHS Mandate's requirement of coverage of abortion-inducing drugs and related education and counseling starting in Plaintiffs' January 1, 2013 plan.

73.     The HHS Mandate makes no allowance for the religious freedom of individuals and the for-profit entities they own and operate, including the DeVries Plaintiffs, and Midwest Fastener Corp., when such individuals object, on sincerely held religious bases, to paying for or providing insurance coverage for abortion-inducing drugs.

74.     A for-profit entity cannot freely avoid the HHS Mandate by simply refusing to provide health insurance to its employees, because the Affordable Care Act imposes significant monetary penalties on entities that would so refuse.

75.     The exact magnitude of these penalties may vary according to the complicated provisions of the Affordable Care Act, but the fine is approximately $2,000 per employee per year, *i.e.,* estimated to be about $374,000 per year potential fine to Plaintiff Midwest Fastener Corp.

76.     The Affordable Care Act also imposes monetary penalties if Plaintiffs were to continue to omit abortion-inducing drugs from their health insurance plan.

77.     The exact magnitude of these penalties may vary according to the complicated provisions of the Affordable Care Act, but the fine is approximately $100 per day per employee, with minimum amounts applying in different circumstances *i.e.,* estimated to be up to $6,825,500.00 per year potential fine to Plaintiff Midwest Fastener Corp.

78.     The imposition of such fines would drive Plaintiff Midwest Fastener Corp. out of business to the detriment of, among others, its 187 employees.

79.     If Plaintiffs do not continue to submit to the HHS Mandate they also trigger a range of enforcement mechanisms, including but not limited to civil actions by the Secretary of Labor or by plan participants and beneficiaries, which would include, but not be limited to, relief in the form of judicial orders mandating that Plaintiffs violate their sincerely held religious beliefs and provide coverage for abortion-inducing drugs to which they religiously object.

80.     The HHS Mandate imposes no constraint on the government's discretion to grant exemptions to some, all, or none of the organizations meeting the HHS Mandate's definition of "religious employers."

81.     Plaintiffs are not "religious" enough under this definition in several respects, including but not limited to because they have purposes other than the "inculcation of religious values," they do not primarily hire or serve Christians, and because Plaintiff Midwest Fastener Corp., is a for profit entity and not a church, integrated auxiliary of a particular church, convention or association of a church, or the exclusively religious activity of a religious order.

82.     The HHS Mandate fails to protect the statutory and constitutional conscience rights of religious Americans like the DeVries Plaintiffs even though those rights were repeatedly raised in the public comments and can be expected to be raised yet again in the most recent "compromise."

83.     The HHS Mandate requires that DeVries Plaintiffs to provide coverage for abortion-inducing drugs and to provide compelled speech, i.e., related education and counseling, through Plaintiff Midwest Fastener Corp. against their consciences and in violation of their religious beliefs and in a manner that is contrary to law.

84.     The HHS Mandate constitutes government-imposed coercion on Plaintiffs to either change their sincerely held religious beliefs or continue to violate their sincerely held religious beliefs so as to avoid massive fines and penalties.

85.     The HHS Mandate imposes a burden on the Plaintiffs' employee recruitment and retention efforts by creating uncertainty as to whether or on what terms Plaintiff Midwest Fastener Corp. will be able to offer health insurance different from or beyond the HHS Mandate's effect or

whether Plaintiff Midwest Fastener Corp. and thus DeVries Plaintiffs, as voting shareholders of a corporation will suffer penalties therefrom.

86.     The HHS Mandate places the DeVries Plaintiffs and Plaintiff Midwest Fastener Corp. at a competitive disadvantage in their efforts to recruit and retain employees.

87.     The DeVries Plaintiffs have sincere conscientious religious objections to providing coverage for abortion-inducing drugs and related education and counseling through their corporation, Plaintiff Midwest Fastener Corp.

88.     The HHS Mandate does not apply equally to all religious adherents or groups.

89.     The Affordable Care Act and the HHS Mandate are not generally applicable because they provide for numerous "exemptions" from their rules, many of which have already been granted to other businesses and entities by the Defendants.

90.     For instance, the HHS Mandate does not apply to members of a "recognized religious sect or division" that conscientiously object to acceptance of public or private insurance funds. See 26 U.S.C. §§ 5000A(d)(2)(a)(i) and (ii). Plaintiffs do not meet this exemption.

91.     In addition, as described above, the HHS Mandate exempts certain churches narrowly considered to be religious employers. Plaintiffs do not meet this exemption.

92.     Furthermore, the Affordable Care Act creates a system of individualized "exemptions" because, under the Affordable Care Act's authorization, the federal government has granted discretionary compliance waivers to a variety of for profit businesses, including large businesses, for purely secular or political reasons. Plaintiffs have not been granted any such exemption.

93.     The HHS Mandate does not apply to employers with preexisting plans that are "grandfathered." Plaintiffs' plan is not grandfathered under the Affordable Care Act.

94.     The HHS Mandate does not apply through the employer mandate to employers having fewer than 50 full-time employees. Plaintiffs, employing more than 50 full-time employees, do not meet this exemption.

95.     Unless relief issues from this Court, Plaintiffs will be forced to continue to comply with the HHS Mandate for the January 1, 2013 plan year and thereafter.

96.     The HHS Mandate will have a profound and adverse effect on Plaintiffs and how they negotiate contracts and compensate their employees.

97.     The HHS Mandate will make it difficult for Plaintiffs to attract quality employees because of uncertainty about health insurance benefits.

98.     Any alleged interest Defendants have in providing free FDA-approved abortion-inducing drugs and related education and counseling without cost-sharing by plan participants could be advanced through other, more narrowly tailored mechanisms that do not burden the religious beliefs of Plaintiffs and do not require them to provide or facilitate coverage of such abortion-inducing drugs and related education and counseling through their health insurance plan.

99.     Plaintiff Midwest Fastener Corp. employees further already have a viable alternative of using their own personal funds for the payment of Abortifacients on a pre-tax basis through the Flexible Spending Account provided as part of Midwest Fastener Corp.'s benefits package.    Thus, there is no significant risk of harm to Plaintiff Midwest Fastener Corp.'s employees.

100.     Without immediate injunctive and declaratory relief as requested herein, Plaintiffs are suffering and will continue to suffer irreparable harm.

101.     Plaintiffs have no adequate remedy at law.

## FIRST CLAIM FOR RELIEF
### (Violation of the Religious Freedom Restoration Act
### 42 U.S.C. § 2000bb)

102.    Plaintiffs reallege all matters set forth above and incorporate them herein by reference.

103.    Plaintiffs' sincerely held religious beliefs prohibit them from providing coverage for abortion-inducing drugs and related education and counseling in Plaintiff Midwest Fastener Corp.  employee health insurance plan.

104.    When Plaintiffs comply with their sincerely held religious biblical beliefs on abortion-inducing drugs and related education and counseling, they exercise religion within the meaning of the Religious Freedom Restoration Act.

105.    The HHS Mandate imposes a substantial burden on Plaintiffs' religious exercise and coerces them to change or violate their sincerely held religious beliefs.

106.    The HHS Mandate chills Plaintiffs' religious exercise within the meaning of RFRA.

107.    The HHS Mandate exposes Plaintiffs to substantial fines and/or financial burdens for their religious exercise if they fail and refuse to comply with the HHS Mandate.

108.    The HHS Mandate exposes Plaintiffs to substantial competitive disadvantages because of uncertainties about their health insurance benefits caused by the HHS Mandate.

109.    The HHS Mandate furthers no compelling governmental interest and is not narrowly tailored to any compelling governmental interest.

110.    The HHS Mandate is not the least restrictive means of furthering Defendants' stated interests.

111.    The HHS Mandate violates RFRA.

WHEREFORE, the Plaintiffs pray for the relief set forth below.

### SECOND CLAIM FOR RELIEF
**(Violation of Free Exercise Clause of the First Amendment
to the United States Constitution)**

112.    Plaintiffs reallege all matters set forth above and incorporate them herein by reference.

113.    Plaintiffs' sincerely held religious beliefs prohibit them from providing coverage for abortion-inducing drugs and related education and counseling in Plaintiff Midwest Fastener Corp.  employee health insurance plan.

114.    When Plaintiffs comply with their sincerely held religious beliefs on abortion-inducing drugs and related education and counseling, they exercise religion within the meaning of the Free Exercise Clause.

115.    The HHS Mandate is not neutral and is not generally applicable.

116.    Defendants have created categorical "exemptions" and individualized "exemptions" to the HHS Mandate.

117.    The HHS Mandate furthers no compelling governmental interest.

118.    The HHS Mandate is not the least restrictive means of furthering Defendants' stated interests.

119.    The HHS Mandate coerces Plaintiffs to change or violate their sincerely held religious beliefs.

120.    The HHS Mandate chills Plaintiffs' religious exercise.

121.    The HHS Mandate exposes Plaintiffs to substantial fines and/or financial burdens for their religious exercise.

122.    The HHS Mandate exposes Plaintiffs to substantial competitive disadvantages because of uncertainties about its health insurance benefits caused by the HHS Mandate.

123.   The HHS Mandate imposes a substantial burden on Plaintiffs' religious exercise.

124.   The HHS Mandate is not narrowly tailored to any compelling governmental interest.

125.   By design, Defendants framed the HHS Mandate to apply to some religious Americans but not to others, resulting in discrimination among religions.

126.   Defendants have created exemptions to the HHS Mandate for some religious believers but not others based on characteristics of their beliefs and their religious exercise.

127.   Defendants designed the HHS Mandate, the religious exemption thereto, and the "compromise" and guidance allowances thereto, in a way that makes it impossible for Plaintiffs and other similar religious Americans to comply with their sincerely held religious beliefs.

128.   Defendants promulgated both the HHS Mandate and the religious exemption/allowances with the purpose and intent to suppress the religious exercise of Plaintiffs and others.

129.   The HHS Mandate violates Plaintiffs' rights secured to them by the Free Exercise Clause of the First Amendment of the United States Constitution.

WHEREFORE, the Plaintiffs pray for the relief set forth below.

### THIRD CLAIM FOR RELIEF
**(Violation of the Establishment Clause of the
First Amendment to the United States Constitution)**

130.   Plaintiffs reallege all matters set forth above and incorporate them herein by reference.

131.   The First Amendment's Establishment Clause prohibits the establishment of any religion and/or excessive government entanglement with religion.

132.    To determine whether religious persons or entities like Plaintiffs are required to comply with the HHS Mandate, are required to continue to comply with the HHS Mandate, are eligible for an exemption or other accommodations, or continue to be eligible for the same, Defendants must examine the religious beliefs and doctrinal teachings of persons or entities like Plaintiffs.

133.    Obtaining sufficient information for the Defendants to analyze the content of Plaintiffs' sincerely held religious beliefs requires ongoing, comprehensive government surveillance that impermissibly entangles Defendants with religion and results in the non-neutral treatment of religions.

134.    The HHS Mandate discriminates among religions and among denominations, favoring some over others, and exhibits a hostility to religious beliefs and/or an excessive entanglement with religion.

135.    The HHS Mandate adopts a particular theological view of what is acceptable moral complicity in provision of abortion-inducing drugs and related education and counseling and imposes it upon all religionists who must either conform their consciences to the HHS Mandate or suffer the penalties.

136.    The HHS Mandate violates Plaintiffs' rights secured to them by the Establishment Clause of the First Amendment of the United States Constitution.

WHEREFORE, the Plaintiffs pray for the relief set forth below.

## FOURTH CLAIM FOR RELIEF
### (Violation of the Free Speech Clause of the First Amendment to the United States Constitution)

137.    Plaintiffs reallege all matters set forth above and incorporate them herein by reference.

138.    Defendants' requirement of knowingly providing insurance coverage for abortion-inducing drugs pursuant to the HHS Mandate also requires Plaintiffs to provide related education and counseling, i.e., expressive speech, and thus forces Plaintiffs to speak in a manner contrary to their religious beliefs.

139.    Defendants have no narrowly tailored compelling interest to justify this compelled speech.

140.    The HHS Mandate therefore violates Plaintiffs' rights secured to them by the Free Speech Clause of the First Amendment of the United States Constitution.

WHEREFORE, the Plaintiffs pray for the relief set forth below.

## FIFTH CLAIM FOR RELIEF
### (Selective enforcement of Affordable Care Act Unconstitutional.)

141.    Since the enactment of the Affordable Care Act the Defendants on one or more occasions have announced delays in the implementation of certain provisions of the Affordable Care Act.

142.    On or about July 2, 2013 the Mark Mazur by and through the Department of the Treasury  via a memorandum entitled *Continuing to Implement the ACA in a Careful, Thoughtful Manner* announced the delayed implementation of the Affordable Care Act provisions which require employers to pay a fine for non-compliance with the Act  "Employer Mandate"

143.    On or about August, 12, 2013 the Defendants through the Department of Labor announced a one year grace period in the implementation of caps on the out of pocket costs which benefits insurers for that period.

144.    The Legislature did not in the enactment of the Affordable Care Act provide for or allow discretion by which the Defendants could select which provisions they would enforce nor empower them to exclude certain parties from such enforcement.

145.    The delays or allowances made by Defendants appear to purposely exclude Plaintiffs and others who seek exclusion based upon religious beliefs and provide further evidence of the Defendants animus towards religious groups.

146.    The Defendants actions amount to selective enforcement of the Affordable Care Act.

147.    The delay further provides evidence that granting of injunctive relief to the Plaintiff's is necessary to  restore the balance of equities and prevent Defendants from utilizing portions of the Affordable Care Act to impose or forward their own religious beliefs on the Plaintiffs and others while excusing enforcement on parties for political or other reasons.

148.    The Defendants actions in selectively enforcing portions of the Affordable Care Act violate Article II Sec. 3 of the United States Constitution which requires the Executive Branch to faithfully enforce the Laws of the United States.

149.    The Defendants selective enforcement of certain provisions of the Affordable Care Act further violate Article 1, Section 7, Clauses 2 and 3 of the United States Constitution.

150.    Finally, the Defendants' Actions violate Plaintiffs' rights under the Fifth Amendment to the United States Constitution requiring due process and equal protection under the laws as extended to the federal government in *Bolling v Sharpe*, 347 U.S. 497 (1954).

151.    Defendants are not empowered by the Affordable Care Act to selectively enforce or not enforce the Act and therefore the Defendants current actions in delaying certain provisions are both unconstitutional and render the Affordable Care Act and the provisions requiring Plaintiff's and their insurer or administrator to provide Abortifacients void.

## **PRAYER FOR RELIEF**

Plaintiffs respectfully request the following relief:

A.    That this Court enter a judgment declaring the HHS Mandate and its application to Plaintiffs and others similarly situated but not before the Court to be an unconstitutional violation of their rights protected by RFRA, the Free Exercise, Establishment, and Free Speech Clauses of the First Amendment to the United States Constitution, the Due Process Clause of the Fifth Amendment to the United States Constitution, and therefore invalid in any way applicable to them;

B.    That this Court enter a preliminary and a permanent injunction prohibiting Defendants from applying the HHS Mandate to Plaintiffs and others similarly situated but not before the Court in a way that substantially burdens the religious beliefs of Plaintiffs or any other person in violation of RFRA and the Constitution, and prohibiting Defendants from continuing to illegally discriminate against Plaintiffs and others not before the Court by requiring them to provide health insurance coverage for abortion-inducing contraception drugs, abortifacient drugs, procedures and related education and counseling to their employees;

C.    That this Court award Plaintiffs their court costs and reasonable attorney's fees, as provided by the Equal Access to Justice Act and RFRA (as provided in 42 U.S.C. § 1988) or other applicable law;

D.    That this Court grant such other and further relief as may be just and proper.

Respectfully submitted,

Dated September 5, 2013                        /s/_____
                                               John R. Garza
                                               Garza Regan & Associates, P.C.
                                               Garza Building
                                               17 W. Jefferson Street, Suite 100
                                               Rockville, MD  20850
                                               (301) 340-8200
                                               (301) 761-4309 fax
                                               jgarza@garzanet.com

                                               Robb S. Krueger
                                               Kreis, Enderle, Hudgins & Borsos, P.C.
                                               PO Box 4010
                                               Kalamazoo, MI  49003-4010
                                               (269) 324-3000
                                               (269) 324-3010 fax
                                               rkrueger@kehb.com

                                               Bryan H. Beauman
                                               Sturgill, Turner, Barker & Moloney, PLLC
                                               333 West Vine Street, Suite 1400
                                               Lexington, KY 40507
                                               (859) 255-8581
                                               (859) 231-0851 fax
                                               bbeauman@sturgillturner.com

                                               Jason C. Miller
                                               Miller, Johnson, Snell & Cummiskey, PLC
                                               250 Monroe Ave NW, Ste 800
                                               Grand Rapids, MI  49503
                                               (616) 831-1794
                                               (616) 988-1794 fax
                                               millerj@millerjohnson.com

## VERIFICATION OF COMPLAINT

We, Henry DeVries, Trustee of the Henry DeVries Revocable Living Trust dated February 26, 1992, and Robert DeVries, Trustee of the Robert Daniel DeVries Living Trust u/a/d February 10, 1993, do hereby state under oath and penalty of perjury that we have personal knowledge of the facts asserted hereto and under and do declare that the statements above are true to the best of our information, knowledge, and belief.

Dated: September 3 RD, 2013

_____
Henry DeVries, Trustee

Dated: September 3 , 2013

_____
Robert DeVries, Trustee

STATE OF MICHIGAN          )
                           ) SS.
COUNTY OF *Kalamazoo*

Subscribed and sworn to before me this 3d day of September, 2013 by Henry DeVries, Trustee of the Henry DeVries Revocable Living Trust dated February 26, 1992, and Robert DeVries, Trustee of the Robert Daniel DeVries Living Trust u/a/d February 10, 1993

> LAUREN MCCLELLAN
> Notary Public - Michigan
> Grand Traverse County
> My Commission Expires Nov 22, 2015
> Acting in the County of *Kalamazoo*

_____
*Lauren McClellan*, Notary Public
*Kalamazoo* County, Michigan
Acting in *Kalamazoo* County, Michigan
My Commission Expires: 11/22/2015